IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARSH PATEL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 25 C 11180 |
| v. | ) | |
| | ) | Hon. Jeffrey I. Cummings |
| BRANDON CROWLEY,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Harsh Patel petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. §2241, on the ground that he is being held without the possibility of release on bond in violation of the Immigration and Nationality Act. In particular, Patel argues that he has been unlawfully detained pursuant to the mandatory detention provision of 8 U.S.C. §1225(b)(2) ("Section 1225(b)(2)—under which he is detained until the conclusion of his removal proceedings without the possibility of a bond hearing—and that he has instead been detained under 8 U.S.C. §1226(a) ("Section 1226(a)"), which would entitle him to "receive [a] bond hearing[] at the outset of detention" and be eligible for release on a minimum bond of $1,500. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing pertinent regulations). Because the Court agrees that Patel is properly detained under Section 1226(a), not Section 1225(b)(2), it grants his petition and orders that he be granted a bond hearing no later than October 31, 2025.

---

[1] The Government represents that Patel is being housed at Clay County Jail in Brazil, Indiana and that Brandon Crowley is the Jail Commander of that facility. Because Crowley is Patel's immediate custodian, the Court substitutes him as Respondent in this matter pursuant to Federal Rule of Civil Procedure 25(d). (Dckt. #13 at 1 n.1). Moreover, this Court will use the term "foreign national" as equivalent to the statutory term "alien" within the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. §1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States.").

1

I.      **BACKGROUND**

On December 15, 2022, Petitioner Harsh Patel, an Indian national, entered the United States on foot near San Luis, Arizona where he was apprehended by United States Customs and Border Protection ("CBP") officials. (Dckt. #7-2 at 2). Patel was released on his own recognizance with an I-94 (an official arrival/departure record issued by CBP)—he was not detained. (*Id.*). Patel, who has no criminal history, (*id.* at 3), timely filed an asylum application with United States Citizenship & Immigration Services ("USCIS") and his application is still pending, (Dckt. #1 at 1).

On September 15, 2025, Patel appeared at the Chicago United States Immigration and Customs Enforcement ("ICE") headquarters for his scheduled FOAS appointment[2] when he was arrested by ICE agents so that he could be placed in removal proceedings. (Dckt. #7-2 at 2–3). ICE arrested Patel pursuant to a Form I-200 warrant under Section 1226(a). (Dckt. #7-3; Dckt. #13 at 2–3). At the time of his arrest, ICE also issued Patel a Notice to Appear ("NTA"), which is the charging document for removal proceedings. *See Vasquez Perez v. Decker*, No. 18-CV-10683 (AJN), 2019 WL 4784950, at *1 (S.D.N.Y. Sept. 30, 2019). The NTA charges Patel with being in the United States in violation of 8 U.S.C. §1182(a)(6)(A)(i) (as a noncitizen present without admission or parole, or who "arrives in the United States at any time or place other than as designated by the Attorney General") and 8 U.S.C. §1182(a)(7)(A)(i)(I) (as an "immigrant at the time of application for admission . . . who is not in possession of a valid" travel document). (Dckt. #7-1 at 3–4). The NTA included a checked box stating that Patel was an "alien present in the United States without being admitted or paroled" and an un-checked box stating "[y]ou are an arriving alien." (*Id*. at 1).

---

[2] FOAS (field office appointment scheduler) is an internal ICE tool for scheduling required check-in appointments with non-citizens.

After his arrest, Patel was detained at the Broadview, Illinois processing center. On September 16, 2025, the day after his arrest, Patel filed this petition for a writ of habeas corpus, arguing that he is subject to the discretionary detention provisions of Section 1226(a), but is being held without the possibility of release on bond in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act ("INA"). Patel was soon transferred to the Clay County Jail in Brazil, Indiana, where he remains today. Because he was detained in Broadview, Illinois when the petition was filed, his petition is properly heard in the Northern District of Illinois, *see Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)), and his subsequent transfer to Indiana does not require otherwise, *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

After Patel filed his petition, the Court ordered the parties to address whether the Court has jurisdiction to hear the petition. Patel filed a separate memorandum addressing jurisdiction, (Dckt. #6), and the Government filed a response to the petition and documents pertaining to Patel's detention by ICE, (Dckt. ##7, 8). The Government then filed a supplemental response to the petition, (Dckt. #13), to which Patel replied, (Dckt. #14).

**II.     ANALYSIS**

It is well-settled that a district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. §2241. As the petitioner, Patel bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See, e.g.*, *Ochoa Ochoa v. Noem*, No 25 CV 10865, 2025 WL 2938779, at *2 (N.D.Ill. Oct. 16, 2025); *Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *3 (D.Minn. Oct. 1, 2025).

3

In the briefing, Patel focuses on his argument that he is properly detained under Section 1226(a), which permits discretionary release on bond—and not under Section 1225(b), which mandates detention—and, as such, he is entitled to a prompt bond hearing in front of an immigration judge.[3] In response, Brandon Crowley ("Respondent") asserts that Patel's petition should be denied because: (a) the Court lacks jurisdiction over this matter; (b) this case is not ripe for disposition; (c) Patel is properly detained under Section 1225(b) under the plain text of the statute and the Board of Immigration Appeals ("BIA")'s September 5, 2025 ruling in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 216 (BIA 2025); and (d) even if Patel is detained under Section 1226(a), he has failed to exhaust his administrative remedies. For the reasons stated below, the Court finds that Patel has carried his burden of proving that he is detained under Section 1226(a) and it rejects Respondent's arguments to the contrary.

### A. The Court has jurisdiction over Patel's petition.

Respondent first argues that the Court lacks jurisdiction to hear this petition under several of the INA's jurisdiction stripping provisions: 8 U.S.C §§1252(b)(9), 1252(g), and 8 U.S.C. §1252(a)(2)(B)(ii). The Court considers each provision in turn.

#### 1. Section 1252(b)(9).

Section 1252(b)(9) establishes the Court of Appeals as the exclusive forum for "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. §1252(b)(9). Respondent contends that Patel is challenging the decision to detain him in

---

[3] In particular, Patel focuses in his reply brief on his statutory argument under Section 1226(a) and he does not respond to Respondent's assertion that his due process claim lacks merit. (*Compare* Dckt. #8 at 8–10 *with* Dckt. #14). Accordingly, the Court does not reach Patel's due process claim and it considers only his statutory argument.

4

the first place and that his detention "aris[es] from" his removal proceedings and is thus insulated from judicial review. (Dckt. #8 at 7–8).

The Court disagrees. Patel is simply challenging the Government's decision to deny him a bond hearing under Section 1225 while the question of whether he will be removed is resolved. As such, Patel is "not asking for review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294. Under these circumstances, "the Supreme Court has rejected the argument that §1252(b)(9) bars review of legal questions concerning detention pursuant to §§1225 and 1226." *Ochoa Ochoa*, 2025 WL 2938779, at *3 (citing *Jennings*, 583 U.S. at 294–95); *see also Guerro Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 2809996, at *3 (D.Mass. Oct. 3, 2025) (holding that Section 1252(b)(9) did not apply to habeas challenge of ongoing detention without a bond hearing). Accordingly, Section 1252(b)(9) does not strip this Court of jurisdiction.

    2. **Section 1252(g).**

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Respondent argues that by challenging his detention, Patel is challenging the manner in which the Attorney General "commence[d]" removal proceedings, such that the INA strips this Court of jurisdiction to hear this matter. (Dckt #8 at 5–6).

The Supreme Court has rejected the expansive reading of Section 1252(g) that Respondent urges the Court to apply. In *Reno v. American-Arab Anti-Discrimination Comm.*,

5

the Court held that Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. 471, 482 (1999) (emphasis in original). In *Jennings*, the Court explained that Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294. As such, "nothing in §1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000); *Guerro Orellana*, 2025 WL 2809996, at *4 (holding that Section 1252(g) did not apply to habeas challenge of ongoing detention without a bond hearing); *Ochoa Ochoa*, 2025 WL 2938779, at *3 (same); *Belsai D.S.*, 2025 WL 2802947, at *5 (same). Accordingly, Section 1252(g) does not strip this Court of jurisdiction.

### 3. Section 1252(a)(2)(B)(ii).

Finally, Respondent argues that 8 U.S.C. §1252(a)(2)(B)(ii) strips this Court of jurisdiction. That provision precludes judicial review of "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* Patel's claims do not, however, challenge a discretionary decision by the Government to detain him instead of releasing him. Indeed, under Section 1225(b), detention is mandatory and not discretionary. Instead, by asserting that he is not subject to detention under Section 1225(b), Patel "challenge[s] the extent of the [Government's] authority under the . . . detention statute[s]," which "is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Ochoa Ochoa*, 2025 WL 2938779, at *4 (holding that Section 1252(a)(2)(B)(ii) did not apply to habeas challenge of ongoing detention without a bond hearing); *Guerro Orellana*,

2025 WL 2809996, at *4 (same). Accordingly, Section 1252(a)(2)(B)(ii) does not strip this Court of jurisdiction.

### B. The ripeness doctrine does not bar adjudication of Patel's petition.

Respondent next asserts that the ripeness doctrine bars this Court from adjudicating Patel's petition. As the Seventh Circuit has recognized, the "[r]ipeness doctrine is meant to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *T.H.E. Ins. Co. v. Olson*, 51 F.4th 264, 270 (7th Cir. 2022), *quoting Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967). "Whether an issue is ripe depends on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration . . . [and] [a]n issue is more likely to be fit for judicial review if it is purely legal rather than factual." *Id.* (cleaned up); *Metro Milwaukee Ass'n of Com. v. Milwaukee Cnty.*, 325 F.3d 879, 882 (7th Cir. 2003) (where "the challenge raises almost purely legal issues . . . [it is] quintessentially fit . . . for present judicial resolution.") (cleaned up).

Respondent argues that this case is not ripe for judicial review because Patel seeks an opinion regarding "contingent future events that may not occur as anticipated." *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (holding that plaintiff's request that his prospective employers be given good references was not ripe where plaintiff did not indicate that he had or would pursue such employment, and agency had not stated that it would fail to provide adequate references). Not so. Patel is being impacted "in a concrete way" by the decision to deny him a bond hearing and a chance for liberty, *see Quezada-Luna v. Gonzales*, 439 F.3d 403, 405 (7th Cir. 2006), and his lawsuit raises a pure question of law—namely, the agency's interpretation of its own governing statutes to find that Section 1225 and not Section 1226 governs his detention.

7

As such, Patel's dispute is ripe for disposition. *See, e.g., Olson*, 51 F.4th at 270; *Metro Milwaukee*, 325 F.3d at 882; *Ciba-Geigy Corp.*, 801 F.2d 430, 435–38 (D.C.Cir. 1986).

### C. Patel is properly detained under Section 1226(a) rather than Section 1225(b)(2).

The heart of the parties' dispute concerns which provision of the INA governs Patel's detention. Patel asserts that his detention is covered by Section 1226(a), while Respondent argues that Patel is detained under Section 1225(b)(2)(A).[4] Until mid-2025, the Department of Homeland Security ("DHS") "ha[d] applied §1226(a) and its discretionary release and review of

---

[4] The respective provisions state, in pertinent part, as follows:

- **8 U.S.C. §1226(a):**

    (a) Arrest, detention, and release

    On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

    (1) May continue to detain the arrested alien;

    (2) May release the alien on—

    (A) Bond of at least $1,500 with security approved by and containing conditions prescribed by, the Attorney General; or

    (B) Conditional parole; but

    (3) May not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

- **8 U.S.C. §1225(b)(2)(A):**

    (2) Inspection of other aliens

    (A) In general

    Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8

detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *5 (E.D.Cal. Oct. 9, 2025); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264, at *1 (D.Nev. Oct. 14, 2025) (until mid-2025, "*millions* of noncitizens had been informed that they could participate in removal proceedings, which can take months or years, out of custody, so long as they could establish they were neither a flight risk nor danger to the community.") (emphasis in original).

However, on July 8, 2025, DHS issued an internal memorandum to all ICE employees indicating that DHS was changing its approach to how it treated foreign nationals "alleged to be present in the country without admission and who would have previously been detained by DHS under 8 U.S.C. §1226 and offered a bond hearing unless subject to criminal detention" and, moving forward, would categorize any such foreign national as "an 'applicant for admission' and therefore subject to mandatory detention under [now] 8 U.S.C. §1225(b)(2)(A)." *Ortiz Donis*, 2025 WL 2879514, at *1; *E.C.*, 2025 WL 2916264, at *1; *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4 (D.Mass. July 24, 2025). On September 5, 2025, the Bureau of Immigration Appeals ("BIA") signaled that it adopted DHS's interpretation of the INA as now mandating detention without bond for all foreign nationals residing in the U.S. who entered without inspection. *E.C.*, 2025 WL 2916264, at *1 (citing *Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)). The implications of DHS's policy shift are staggering: "[i]t has been estimated that this novel interpretation [of the INA] would require the detention of millions of immigrants currently residing in the United States." *Martinez*, 2025 WL 2084238, at *5.

Sections 1226(a) and 1225(b)(2)(A) are mutually exclusive in that both provisions cannot simultaneously govern the terms of Patel's duration. *See Artiga v. Genalo*, No. 25-CV-5208,

2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025). The Court's determination as to which of these statutory provisions governs Patel's detention raises a question of law.[5] *Jennings*, 583 U.S. at 292. For the reasons that follow, the Court finds in favor of Patel and holds that Section 1226(a) governs his detention.

### 1. The Government has consistently treated Patel as detained under the authority of Section 1226(a).

The record shows that the Government has consistently treated Patel as detained under the authority of Section 1226(a) since the date he was first apprehended after crossing the border, and settled law precludes the Government from now switching gears to contend that he has actually been detained under Section 1225(b)(2). To begin, after CBP apprehended Patel as he crossed the southern border, Patel was released on his "own recognizance." Courts have recognized that "release on recognizance constitutes a form of conditional parole from detention housed in the provisions of §1226's discretionary detention." *J.U. v. Maldonado*, No. 25-CV-04836 (OEM), 2025 WL 2772765, at *6 (E.D.N.Y. Sept. 29, 2025) (citing multiple cases to the same effect); *Martinez*, 2025 WL 2084238, at *3 ("Respondent's contrary theory of the procedural history cannot make sense of Petitioner's release on recognance because individuals detained following examination under [S]ection 1225 can only be paroled into the United States 'for urgent humanitarian reasons or significant public benefit.'"); *Ortiz Donis*, 2025 WL

---

[5] Respondent's policy argument that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was intended "to stop treating foreign nationals who had evaded immigration authorities better than foreign nationals who correctly applied for admission at ports of entry" during immigration proceedings, (Dckt. #13 at 9), does not answer the question of which statutory provision governs the terms of Patel's detention. This is so because the IIRIRA's "alter[ation of] the typology of immigration proceedings to 'place[] on equal footing' all immigrants who have not been lawfully admitted.' . . . says nothing about detention pending the outcome of those proceedings." *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *12 (D.Mass. Aug. 19, 2025), *quoting Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020).

2879514, at *7 (agreeing that Section 1225(b)(2) does not apply to foreign nationals "who have been released by DHS on their own recognizance into the interior of the country.").

Next, on Patel's NTA, the Government "checked the box labeled 'You are an alien *present* in the United States who has not been admitted or paroled' rather than checking the box labeled '*arriving* [alien].'" *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *7 (E.D.Mich. Aug. 29, 2025) (emphasis in original); *E.C.*, 2025 WL 2916264, at *8 (same). The manner in which the boxes were checked on Patel's NTA shows that the Government determined that Patel was detained under Section 1226(a)—not under Section 1225(b)(2))—because "Section 1225(b)(2)(A) would correspond to those 'arriving' while Section 1226(a) would correspond to those 'present.'" *Lopez-Campos*, 2025 WL 2496379, at *7. Finally, ICE arrested Patel pursuant to a Form I-200 "warrant of arrest of alien," which was issued under the authority of Section 1226(a). *Id.*; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D.Mass. Aug. 19, 2025) (same). Indeed, Respondent reiterated in his supplemental memorandum that Patel was arrested and detained with a warrant that was issued under the authority of Section 1226(a). (Dckt. #13 at 2–3); *see Romero*, 2025 WL 2403827, at *8 (noting that "*in this very litigation*, Respondents explained Petitioner's detention in terms of section 1226, rather than section 1225.") (emphasis in original).

Thus, the Government has affirmatively decided to treat Patel as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b). *See, e.g., Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023), *quoting DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) (the "*Chenery* doctrine requires [an] agency to 'defend its actions based on the reasons it gave when it acted' in the interest of promoting agency accountability, instilling confidence in agency

11

decisions, and maintaining an orderly process of review."); *Lopez-Campos*, 2025 WL 2496379, at *7 ("It was not until Lopez-Campos requested a custody redetermination hearing (bond hearing) that Respondents claimed his detention was under Section 1225(b)(2)(A). The Court cannot credit this new position that was adopted post-hac, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 237188, at *5 (S.D.N.Y. Aug. 13, 2025) (same); *E.C.*, 2025 WL 2916264, at *8 (rejecting Respondents' claim that Section 1225(b) should apply where they "have presented no evidence that the . . . NTA was rescinded or that a new one was issued, nor any determination by ICE/DHS that Petitioner is detained under §1225(b), other than the arguments made by Respondents in their briefing.").

### 2. The Supreme Court has treated foreign nationals who, like Patel, are already in the United States as being governed by Section 1226(a).

In *Jennings*, the Supreme Court distinguished between foreign nationals "who have arrived at an official 'port of entry' (*e.g.,* an international airport or border crossing) or who have been apprehended trying to enter the country at an unauthorized location" and other foreign nationals "who are already present inside the country." *Jennings*, 583 U.S. at 285. In particular, the Court held that Section 1225(b) "applies primarily to [foreign nationals] seeking entry into the United States, *id.* at 297, whereas Section 1226 "applies to [foreign nationals] already present in the United States," *id.*, at 303; *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (distinguishes non-citizens "who have come to our shores seeking admission" from "those who are within the United States after an entry, irrespective of its legality.").

"In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal

12

proceedings under §§1226(a) and (c)." *Jennings*, 583 U.S. at 289; *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *23 (W.D.Wash. Sept. 30, 2025) (same); *see also Martinez*, 2025 WL 2084238, at *8 (finding that Section 1225(b) "simply had no application" where it could not "be denied" that petitioner, who was not detained until more than a year after her initial encounter, was "already in the country . . . after having effected an entry.") (cleaned up).

### 3. The BIA's decision in *Yajure Hurtado* is unpersuasive and not entitled to deference.

Respondent relies heavily on the BIA's decision in *Yajure Hurtado* to support his assertion that Patel's detention is controlled by Section 1225(b)(2). However, *Yajure Hurtado* is "entitled to little deference," *Ortiz Donis*, 2025 WL 2879514, at *7, because "courts must exercise independent judgment in determining the meaning of statutory provisions" and they "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394, 413 (2024); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 n.9 (D.Mass. July 7, 2025) (same). As the Supreme Court has made clear, "agencies have no special competence in resolving statutory ambiguities," "[c]ourts do." *Loper Bright*, 603 U.S. at 400–01; *Ortiz Donis*, 2025 WL 2879514, at *7 (same).

What's more, the decision in *Yajure Hurtado* is unpersuasive for several reasons. First, the BIA's view has not "remained consistent over time," *Loper Bright*, 603 U.S. at 386, given that the *Yajure Hurtado* decision contradicts "three recent, albeit unpublished, decisions by the [BIA], all clearly holding that the detention of a non-citizen arrested within the United States is governed under [S]ection 1226, rather than [S]ection 1225." *Martinez*, 2025 WL 2084238, at *8; *Ortiz Donis*, 2025 WL 2879514, at *7 (same); *Maldonado*, 2025 WL 2772765, at *7. Second, the BIA's decision "conflicts with the implementing regulation for §1225(b)" by adopting a

13

more expansive interpretation of Section 1225(b) than the regulation. *Ortiz Donis*, 2025 WL 2879514, at *8; *Martinez*, 2025 WL 2084238, at *6. Finally, dozens of district court decisions have rejected the BIA's expansive interpretation of Section 1225(b) in *Yajure Hurtado*. *See, e.g., Maldonado*, 2025 WL 2772765, at *7; *Ortiz Donis*, 2025 WL 2879514, at *7.[6]

### 4. Patel's proposed construction of Sections 1225(b)(2) and 1226 gives meaning to all provisions of the statutes whereas Respondent's proposed construction does not.

As in a number of other recent habeas cases, "[t]he issue before the Court boils down to one of statutory interpretation and the harmonization of Sections 1225 and 1226 of the INA." *Lopez-Campos*, 2025 WL 2496379, at *6.

The Supreme Court has made clear that "'[a] statute should be construed so that effect is given to all its provisions[.]'" *Id.*, quoting *Corley v. United States*, 556 U.S. 303, 314 (2009). Moreover, each word in a statute is intended to have "particular, nonsuperfluous meaning" and statutes must be construed in this manner. *Bailey v. United States*, 516 U.S. 137, 146 (1995); *Bilski v. Kappas*, 561 U.S. 593, 607–08 (2010) (Courts may not interpret "any statutory provision in a manner that would render another provision superfluous."); *In re Shek*, 947 F.3d 770, 778 (11th Cir. 2020), *quoting TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[T]he Supreme Court has instructed us that the surplusage canon does not only apply when a potential interpretation would leave a statutory provision with *no* role; it also applies when an

---

[6] Respondent's reliance on the decisions in *Pena v. Hyde*, No. 25-11983-NMG, 2025 WL 2108913 (D.Mass. July 28, 2025) and *Florida v. United States*, 660 F.Supp.3d 1239 (N.D.Fla. 2023), is misplaced because those decisions are inapposite. *Pena* did not address the issue of whether Section 1225 or Section 1226 applied to the detention of a foreign national analogous to Patel's situation; indeed, the court did not even discuss Section 1226(a). *See Arce v. Trump*, No. 8:25CV520, 2025 WL 2675934, at *3 n.3 (D.Neb. Sept. 18, 2025). The *Florida* case "centered around noncitizens who were apprehended at the Southwest border [and] [n]*ot* noncitizens who are present without admission and already residing in the United States." *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *3 (W.D.Ky. Sept. 19, 2025). The *Florida* court also acknowledged "[a]s the Supreme Court stated in *Jennings*, §1226 applies to 'certain aliens *already in the country*.'" *Florida*, 660 F.Supp.3d at 1275, *quoting Jennings*, 583 U.S. at 289, 303 (emphasis added in *Florida*).

14

interpretation would render a 'clause, sentence, or word . . . superfluous, void, or *insignificant*.'") (emphasis in original).  Finally, "[e]ach word within the statute must be given 'it[s] ordinary, contemporary, common meaning, while keeping in mind that statutory language has meaning only in context.'" *Lopez-Campos*, 2025 WL 2496379, at *6, *quoting Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022).

Here, Patel's proposed construction of Sections 1225 and 1226 honors these canons of statutory construction by giving ordinary meaning to all statutory provisions and words. Respondent's proposed construction, however, does not.

To begin, Respondent's proposed construction would render portions of Section 1225(b)(2)(A) superfluous and without natural meaning.  For Section 1225(b)(2)(A) to apply to Patel, the following conditions must be met: an "examining immigration officer" must determine that he is: (1) an "applicant for admission;" (2) "seeking admission;" and (3) "not clearly and beyond a doubt entitled to be admitted." *Martinez*, 2025 WL 2084238, at *2; *Romero*, 2025 WL 2403827, at *9.  Respondent asserts that all foreign nationals in the United States are "applicants for admission" regardless of their proximity to the border, the length of time that they have been present here, or whether they ever had the subjective intent to properly apply for admission; and, further, that foreign nationals are "seeking admission" no matter how long they have been present in the United States as long as they have "not agreed to depart" or "conceded [their] removability." (Dckt. #8 at 10–13).

Thus, according to Respondent, "applicants for admission" are "seeking admission" and, as such, the two phrases are "synonymous." *See Ortiz Donis*, 2025 WL 2879514, at *8.  Courts, as Patel urges this Court to do, have rejected this interpretation because it renders the phrase "seeking admission" superfluous. *Id.*; *Romero*, 2025 WL 2403827, at *9–10; *Pablo Sequen v.*

15

*Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *9 (N.D.Cal. Oct. 15, 2025).[7]

Moreover, Respondent's interpretation construes "seeking admission" in an unnatural manner by ignoring the fact that the phrase "necessarily implies some sort of present-tense action."

*Martinez*, 2025 WL 2084238, at *6. As the *Lopez-Campos* court observed:

> Respondents completely ignore the term "seeking" when attempting to broaden what "seeking admission" means. This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection. Noncitizens who are just "present" in the country—those like Lopez-Campos, who have been here for years upon years and never proceeded to obtain any form of citizenship (*e.g.* asylum, permanent residency, refugee status, visas, etc.)—are not "seeking" admission. True, they may technically be "a noncitizen present in the United States who has not been admitted" to make them an "applicant for admission" but these are not interchangeable. The statute also requires that an "examining immigration officer" determine that the noncitizen is "seeking admission." That was not and could not have been done under the facts and circumstances of this case.

*Lopez-Campos*, 2025 WL 2496379, at *6.

Another analogy is useful to illustrate this principle:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point one would say that they had entered unlawfully but not seek a lawful means of remaining there.

*Lopez Benitez*, 2025 WL 237188, at *7; *Ortiz Donis*, 2025 WL 2879514, at *8; *see also United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) (stating that the "use of the present

---

[7] Contrary to Respondent's contention, (Dckt. #13 at 9), Patel's interpretation does not read the phrase "applicant for admission" out of Section 1225(b)(2)(A). "[T]o be an 'applicant for admission,' one must actually be here, either in the United States or at its door. By contrast, one can 'seek admission' from anywhere in the world, for example, by applying for a visa at a consulate abroad. . . . Thus, giving separate meaning to the phrase 'seeking admission' does not 'read[] "applicant for admission" out of [Section] 1225(b)(2)(A).'" *Romero*, 2025 WL 2403827, at *10 (cleaned up).

progressive tense, formed by pairing a form of the verb 'to be' and the present participle, or '-ing' form of an action verb, generally indicates continuing action").

Respondent's proposed construction of Section 1225(b)(2)(A) would also render superfluous certain provisions of Section 1226. To recap, Section 1226(a) allows for the release of foreign nationals on bond and with conditions pending a decision on whether they are to be removed from the United States. Section 1226(c), however, requires the Attorney General to take into custody certain categories of foreign nationals pending a decision on their removal. Moreover, in January 2025, Congress amended Section 1226(c) with the Laken Riley Act to add an additional category of foreign nationals who are subject to mandatory detention. *See* 8 U.S.C. §1226(c)(1)(E); *Ortiz Donis*, 2025 WL 2879514, at *9. If, as Respondent asserts, Section 1225(b)(2)(A) requires the mandatory detention of *all* foreign nationals within the United States, Section 1226(c) and its recent amendment pursuant to the Laken Riley Act would be superfluous and of no effect, because the subset of foreign nationals subject to mandatory detention under Section 1226(c) would already be included within Respondent's expansive reading of Section 1225(b)(2). *Martinez*, 2025 WL 2084238, at *7; *Ortiz Donis*, 2025 WL 2879514, at *9–10. Furthermore, Respondent's interpretation of Section 1225(b)(2)(A) would largely nullify Section 1226(a) because "it is not clear under what circumstances §1226(a)'s authorization of detention on a discretionary basis would ever apply."). *Lopez Benitez*, 2025 WL 237188, at *8.

"This is a presumptively dubious result given that 'the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.'" *Romero*, 2025 WL 2403827, at *11, *quoting Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013); *Corley v. United States*, 556 U.S. 303, 314 (2009) (rejecting interpretation of statute that rendered entire subsection unnecessary under the principle that a statute should be

17

read "so that part will be inoperative or superfluous"). Moreover, it defies reason to believe that Congress would have enacted the Laken Riley Act if it believed and intended for that Act to have no effect because Section 1225(b)(2)(A) already mandated the detention of all foreign nationals pending the resolution of their removal proceedings. *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *Martinez*, 2025 WL 2084238, at *7 (same).

For all of these reasons, it is no surprise that Respondent has failed to cite any decision by an Article III court that supports his interpretation of Sections 1225(b)(2)(A) and 1226(a) and virtually all courts that have considered this issue have rejected the reasoning in *Yajure Hurtado*. Accordingly, the Court rejects Respondent's proposed interpretation and finds that Patel was arrested pursuant to a warrant and detained pursuant to the authority of Section 1226(a).

### D. Patel is not required to exhaust his administrative remedies because doing so would be futile.

Satisfied that Patel has been detained under the authority of Section 1226(a), the Court next considers whether Patel—as Respondent asserts—is required to exhaust his remedies before the immigration court and the BIA. In particular, Respondent asserts that Patel should be required to exhaust all available administrative remedies because he has not requested, much less been denied, bond by an immigration judge ("IJ"). (Dckt. #8 at 14–15). Patel responds that requesting a bond determination from an IJ would be futile, because an IJ is bound to follow the BIA's opinion in *Yajure Hurtado*, which holds that those in Patel's posture are subject to mandatory detention without bond. (Dckt. #6 at 4–5). The Court agrees with Patel.

As the parties explain, Congress has not imposed a statutory requirement for administrative exhaustion, and thus "sound judicial discretion governs" whether exhaustion should be required. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). The general

18

rule that a party must exhaust administrative remedies before coming to federal court is "not absolute." *Id.* at 1016. Individual interests "demand" that exhaustion be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.*, quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002).

Here, the Court concludes that attempting exhaustion would be futile because an IJ lacks the ability to consider Patel's bond request absent Section 2241 relief due to its obligation to follow *Yajure Hurtado*. 29 I&N Dec. at 228. Thus, as in *Gonzalez*, the BIA has "deemed [Patel's] statutory contention to be without merit" and "there is nothing to indicate the BIA would change its position." *Gonzalez*, 355 F.3d at 1019. Under these circumstances, this Court, as have many others, finds that Patel need not request bond from an IJ before seeking relief through a petition for habeas corpus under Section 2241 because doing so would be futile. *See, e.g., Mosqueda v. Noem*, No. 25-cv-2304, 2025 WL 2591530, at *7 (C.D.Cal. Sept. 8, 2025) (requiring petitioner to appeal adverse IJ bond determination to the BIA would be futile in light of *Yajure Hurtado*); *Sanchez Ballestros v. Noem*, No. 3:25-cv-594-RGJ, 2025 WL 2880831, at *2–3 (W.D.Ky. Oct. 9, 2025).

## CONCLUSION

For the reasons stated above, the Court finds that Petitioner is detained in violation of the laws of the United States pursuant 8 U.S.C. §2241. The Court further finds that Petitioner is detained under the authority of 8 U.S.C. §1226(a) and that he is entitled to a bond hearing. Petitioner's petition is thus granted. By October 31, 2025, Respondent must either: (1) provide Petitioner with a bond hearing before an immigration judge, at which the Government shall bear

19

the burden of justifying his continued detention by clear and convincing evidence of dangerous or risk of flight; or (2) release Petitioner from custody, under reasonable conditions of supervision. The Clerk of the Court is further ordered to substitute Brandon Crowley, currently Petitioner's immediate custodian, as the Respondent, and to amend the case name in CM/ECF to reflect this change.

**Date: October 24, 2025**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**